Evans, J.
delivered the opinion* of the Court.
The Act of 1839, which is only a re-enaction 'of what was the law before, has prescribed a certain order, in which the Ordinary is required to grant administration. The widow is first entitled, and I concur fully in what is said in 2 Hill, 347, in Thompson v. Huchet, that if she had applied, the Ordinary would have had no discretion. The law has given her the right, and it cannot be denied to her. But it by no means follows, from this, that she may transfer her right to a stranger, and that the Ordinary is bound to appoint her nominee, as he seems to have supposed was decided in the case above referred to. This would be giving her not only the right to administer, but also the power of appointment, thus substituting her discretion for that of the Ordinary. The case of Thompson v. Huchet decides nothing more than that the Ordinary, in his discretion, might revoke an administration granted to one stranger, and grant it to another stranger, at the request and nomination of the widow. The principle to be gathered from the Act of the Legislature, and the decisions in England and some of the States, is, that the administration should be committed to those having the greatest interest in preserving the estate' — and if such persons decline the administration, their wishes and preferences, where the administration is to be committed to a stranger, are entitled to great weight in the exercise of the Ordinary’s discretion. In this case, the appellee based his claim to the administration of the estate, on the ground that he was a creditor — but there is no evidence of the fact, and it is not found in the special verdict — he must therefore be regarded as a stranger, presenting himself as one not having any legal claims, but as one willing and desirous of being appointed administrator. In thus stating the case, I do not mean to say that, as a creditor, he is entitled to preference over a stranger. The Act is not very clear on this point, and we mean to decide nothing that is outside of the case made. Brown has been dead seve *342 ral years, and it is conceded that he died utterly insolvent. His assets, it is said, are only fourteen dollars, and his debts as many thousands. This controversy is therefore nqt who-shall have bis assets, but who shall have possession of his papers. _ The appellee contends that he is engaged in a litigation in the Court of Equity, in which these papers are of importance to him, and should not be committed to the attorney of his adversaries. There is something plausible in this, and if the facts were clearly established, would be entitled to some weight; but, on the other hand, reasons equally strong are assigned why the custody of the papers (for that is the controversy) should not be given to the appellee. The question presented itself to my mind, during the argument, whether, on a mere administration order, within the discretion of the Ordinary, not affecting legal rights, an appeal lies to'the Court of Common Pleas. The words of the Act are very comprehensive, but the question is not whether a decree of the Ordinary may not be appealed from, but who has the right of appeal. Can any one appeal who has no legal right, on the ground merely that the Ordinary has not exercised his discretion properly? But. in the view which is taken of the case by this Court, it is not necessary to decide that question. The case is before us. It has been argued on its merits, and upon them we will decide the case. Brown died some years ago, wholly insolvent, and it is not likely that any administration would .ever have been applied for but for the order in the Court of Equity, that certain proceedings should be amended by making other parties, so that the legal representatives of George Smith, Savage Smith and George T. Brown should be before the Court. In consequence of this order, the appellant, McBeth, has been appointed by the Ordinary. To this appointment Col. Hunt objects, and we are to decide on the objection. The objection is not founded on any legal right, but is addressed wholly as argument to the discretion of the Court. As I understand the case, from reading the Chancellor’s decree, the questions involved in the cases in Equity relate to the following matters: 1. Can Col. Hunt, as the assignee of Brown and wife, charge the partnership of George and Savage Smith with the sum of $23,000, advanced by Josiah Smith, the grandfather of Mrs. Brown?' 2. The settlement of the copartnership, as between the partners ; and 3. What amount was received by Brown and wife, as distributees of George Smith, from the partnership effects. This latter involves the further question, whether the payments to Brown and wife were from the partnership effects, or the individual estate of George Smith. Brown was not the administrator of 'Josiah Smith or George Smith, and we *343 have no reason to suppose any of the vouchers, receipts or other papers ever came to his possession. The papers which relate to the alleged advance of money by Josiah Smith, are, or should be, in the possession of his legal representative. Those which concern the partnership, belong to the representatives of the partners. As to Brown’s receipts for what was paid to him, I should suppose those who paid took and have the possession of the receipts. Col. Hunt in the settlement cannot be charged with any payments to Brown, without the introduction of Brown’s receipt — and then it will appear whether the payment was on account of the partnership or the separate estate of George Smith. As the Chancellor, in directing the bill to be amended, says that Col. Hunt “is entitled to the assistance of Brown or his representatives in taking the account,” I should be very reluctant to see any one who occupies an adverse position placed in the administration of Brown’s estate. But I am wholly unable to perceive that the administration granted to McBeth will enable him to do any thing from which an injury can arise in the adjustment of those questions which are at issue in the Court of Equity. Besides, it is conceded that if this administration were revoked, the Ordinary would be compellable to grant letters to Mrs. Brown. The business of course would be under the direction and control of McBeth, whom she has employed as her attorney to manage the estate. After the threat, as appears by her letter, Col. Hunt has made to sue her on the covenants in the deed of assignment, Mrs. Brown will hardly permit the papers of her husband to go into his hands, by allowing him to administer. We do not perceive that any valid objection exists to the Ordinary’s decree. It would seem he decided on the belief that the nominee of the widow had a legal preference. In this he was wrong, but it does not follow that it should be reversed on that account. The judgment may be right, and the reason assigned wrong, but this is no ground of reversal,, if sufficient reason for the decision exists. The case in Equity has been pending more than twenty years. It is time it should be ended. To send this case back to the Ordinary, would in all probability operate .as a further delay, without putting the appellee in any better condition than he is at present. For these reasons a majority •of the Court are of opinion that the decision of the Circuit Court should be reversed, and the decree of the Ordinary .sustained. It is therefore ordered that the postea, be delivered to the appellant, McBeth.
O’Neall, J. Wardlaw, X and Withers, X concurred.

Motion granted.